UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTRA COSTA REGIONAL MEDICAL CENTER, SAN FRANCISCO GENERAL HOSPITAL, STANFORD HOSPITAL & CLINICS, UCSF MEDICAL CENTER,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT F. KENNEDY JR., Secretary of Health and Human Services,<br><br>Defendant. | Case No. 24-cv-08541-RS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS MOTION** |

## I. INTRODUCTION

Plaintiffs, four hospitals that receive Medicare reimbursement from the federal government, seek reinstatement of a reimbursement determination appeal that they accidentally withdrew. They do so on the grounds that the Provider Reimbursement Review Board's refusal to reinstate violates the Administrative Procedure Act as arbitrary and capricious, abuse of discretion, and contrary to law. Defendant disagrees. Plaintiffs and Defendant have filed cross motions for summary judgement on this issue. While the denial of the reinstatement request represents a stark application of the rules in light of the seemingly innocent mistake involved, it cannot be said that it lacks a reasonable explanation, support in the record, or appropriate application of law. Accordingly, Defendant's motion for summary judgment is granted and Plaintiff's cross motion is denied.[1]

---

[1] Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral argument,

## II. BACKGROUND

**1. Medicare Reimbursement Scheme**

Hospitals providing inpatient services to Medicare patients are eligible for reimbursement, with amounts depending on fixed "diagnostic related group" ("DRG") rates. 42 U.S.C. §§ 1395c, 1395d, 1395i, 1395ww(d). To lessen the financial blow of cases where the cost of the case greatly exceeds the DRG payment amount, Congress has provided for additional "outlier" payments. *See generally Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013 (9th Cir. 2004); 42 U.S.C. § 1395ww(d)(5)(A). Whether a case qualifies for an outlier payment depends on whether the case's estimated costs exceed the fixed loss threshold, a cutoff point set by the Health and Human Services ("HHS") Secretary each fiscal year. *See* 42 U.S.C. § 1395ww(d)(5)(A)(ii); 42 C.F.R. §§ 412.80(a)(3), 412.84(i).

At the end of a hospital's fiscal year, a Medicare Administrative Contractor, acting as the Secretary's agent, issues a final determination of the total reimbursement owed to the hospital in a "notice of program reimbursement" ("NPR"). *See* 42 U.S.C. § 1395h; 42 C.F.R. §§ 405.1801(a)(1)-(3), 405.1803, 413.20(b), 413.60, 413.64(f), 421.100, 421.400. Under 42 U.S.C. § 1395oo(a), a hospital has a right to appeal, with a hearing, the reimbursement determination to the Provider Reimbursement Review Board (the "Board" or "PRRB") where certain jurisdictional requirements, such as dissatisfaction with a final determination by a Medicare Contractor and a minimum amount in controversy, have been satisfied. 42 U.S.C. § 1395oo(a); 42 C.F.R. §§ 405.1803(a)(1). "If the matters in controversy involve a common question of fact or interpretation of law or regulations," two or more providers may file a "group appeal." 42 U.S.C. § 1395oo(b); *see* 42 C.F.R. § 405.1837. Under Section 1395oo(d), the Board "ha[s] the power to affirm, modify, or reverse a final determination" of a Medicare Contractor. 42 U.S.C. § 1395oo(d).

To govern provider appeals, withdrawals, dismissals, and reinstatements, the Board has

---

and the hearing set for January 15, 2026 is vacated.

adopted a series of rules. Board Rule 46, "Withdrawal of an Appeal or Issue within an Appeal," permits a provider to "file a request to withdraw the issue(s) or case." Dkt. 21-2, Board Rule 46. The rule further provides that "[a] provider's request for withdrawal is self-effectuating and does *not* require any action by the Board once it is filed." *Id* (emphasis in original).

Board Rule 47 governs reinstatements. Per Board Rule 47.1, Motion for Reinstatement, a provider may move for reinstatement of a dismissed or withdrawn case within three years of the date of the Board's receipt of the provider's withdrawal. *Id*., Board Rule 47.1. The provider must "set[] out the reasons for reinstatement." *Id.* "The Board will not reinstate an issue(s)/case if the provider was at fault." *Id.* When a case was dismissed for failure to comply with Board procedures, Board Rule 47.3, "Dismissals For Failure to Comply with Board Procedures," governs:

> Upon written motion demonstrating good cause, the Board may reinstate a case dismissed for failure to comply with Board procedures. Generally, administrative oversight, settlement negotiations or a change in representative will not be considered good cause to reinstate. If the dismissal was for failure to file with the Board a required position paper, Schedule of Providers, or other filing, then the motion for reinstatement must, as a prerequisite, include the required filing before the Board will consider the motion.

*Id.*, Board Rule 47.3.

Providers may seek judicial review of a final reimbursement decision of the Secretary by filing a complaint in the federal district court for the judicial district in which the provider is located or in the District of Columbia. 42 U.S.C. §1395oo(f)(1).

**2. The Hospitals' 2007 Reimbursement Determination Appeals**

Between 2013 and 2017 the Medicare Administrator Contractors for Plaintiffs Contra Costa Regional Medical Center ("Contra Costa"), San Francisco General Hospital ("San Francisco General"), Stanford Hospital & Clinics ("Stanford"), and UCSF Medical Center ("UCSF") (collectively, the "Hospitals" or "Plaintiffs") issued final NPRs for the Hospitals' fiscal years ending in summer 2007. Since each Hospital fiscal year spanned two federal fiscal years ("FFYs"), the NPRs were governed by two separate HHS annual rulemakings: FFY 2006 and FFY 2007. Each Plaintiff filed an individual appeal of their respective NPRs which included challenges

to the outlier payments. In 2018, the Plaintiffs requested the Board review as a group appeal their outlier payment challenges. Collectively, these are the "Hospital FY 2007 Appeals."

In July 2024, the Hospitals settled with HHS the outlier payment claims governed by the FFY 2006 HHS payment rules. However, on July 8, 2024, while seeking to withdraw those claims on the PRRB's electronic case management system, a representative for the Hospitals withdrew the Hospital FY 2007 Appeals in their entirety, i.e. those governed by the FFY 2006 and FFY 2007 payment rules. As of that time, the Hospital FY 2007 Appeals had been pending for over six years, with no material action having occurred for more than five years and no set hearing date.

Upon realizing the error, the Hospitals filed an "Unopposed Request for Partial Reinstatement of Providers" the next day. The request asked the Board to reinstate the portion of the dismissed appeals that challenged the FFY 2007 rulemaking. Dkt. 12-2 at 22. The request for reinstatement letter explained that pursuant to a settlement agreement with the Center for Medicare & Medicaid Services ("CMS"), the Hospitals were only required to dismiss the portion of their appeals relating to FFY 2006 but had "mistakenly" withdrawn the appeals in their entirety. *Id.* The letter also explained that reinstatement would not cause undue prejudice to the Medicare Administrator Contractors or CMS and neither opposed the request. *Id.* at 23.

On September 30 2024, the Board denied reinstatement, quoting C.F.R. § 405.1868, regarding "Board actions in response to failure to follow Board rules," Board Rule 47.1, Motion for Reinstatement, and Board Rule 47.3, Dismissals for Failure to Comply with Board Procedures. *Id.* at 15-20. The denial states that, per these Board Rules, the Board will not reinstate if the provider was at fault and good cause is not established and asserts that, here, the Hospitals were at fault and did not establish good cause. *Id.*

On October 7, 2024, the Hospitals requested that the CMS Administrator Review the Board's decision to deny reinstatement. *Id.* at 8. On October 30, 2024, the CMS Administrator's Designee declined to review the Board's decision. *Id.* at 6. This lawsuit followed. The Hospitals seek a judgment vacating the Board's decision, finding that the Hospitals' appeals must be reinstated, and remanding them to the Board for reinstatement.

### III. LEGAL STANDARD

A final decision of the Board is reviewed under the standards of review for agency action set forth in the Administrative Procedure Act ("APA"). 42 U.S.C. § 1395oo(f)(1) (incorporating the APA as the applicable standard); 5 U.S.C. § 706. *See also Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994). When reviewing final agency action under the APA, the usual summary judgment standard does not apply. *Hosp. of Univ. of Penn. v. Sebelius*, 634 F. Supp. 2d 9, 12 (D.D.C. 2009). Instead, the administrative agency serves as factfinder, and so "the function of the district court is to determine whether… as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985).

Under the APA, a district court may overturn an agency decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or if the decision is "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E). *See Chappell v. Wallace*, 462 U.S. 196, 303 (1983) (holding that decisions of the Board for Correction of Military Records are subject to judicial review and may "be set aside if they are arbitrary, capricious, or not based on substantial evidence."). "Agency action is arbitrary and capricious if it is not " 'reasonable and reasonably explained.' " *Ohio v. Environmental Protection Agency*, 603 U.S. 279, 292, 144 S.Ct. 2040, 219 L.Ed.2d 772 (2024) (citing *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423, (2021)). The court may not "infer an agency's reasoning from mere silence." *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008) (citation omitted). Substantial evidence requires "more than a mere scintilla but less than a preponderance." *Int'l Rehab. Scis. Inc. v. Sebelius*, 688 F.3d 994, 1000 (9th Cir. 2012). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted).

### IV. DISCUSSION

The Hospitals argue that the Board's denial of their unopposed request to reinstate the mistakenly withdrawn appeals was arbitrary, capricious, an abuse of discretion, and contrary to

1  law. Defendant, however, argues that the Board could only reinstate if the Hospitals were not at

2  fault or, if they were, they had good cause, and, that the Hospitals were at fault without good cause

3  such that denial of reinstatement is legally and factually supported. There is no dispute that the

4  Hospitals withdrew their appeal of their own volition and subsequently sought reinstatement.

**1. Reasoned Explanation**

The Board began its explanation by quoting C.F.R. § 405.1868, regarding "Board actions in response to failure to follow Board rules." The Board may " 'take appropriate actions in response to the failure of a party to a Board appeal to comply with Board rules and orders or for inappropriate conduct during proceedings in the appeal.' " Dkt. 18-2 at 16-17 (quoting C.F.R. § 405.1868(a)). " 'If a provider fails to meet a filing deadline or other requirement established by the Board in a rule or order, the Board may' " " '[d]ismiss the appeal with prejudice…[i]ssue an order requiring the provider to show cause why the Board should not dismiss the appeal… [or] [t]ake any other remedial action it considers appropriate.' " *Id.* (quoting C.F.R. § 405.1868(b)). Here, the Hospitals did not fail to comply with a Board rule or order, did not engage in inappropriate conduct during appeal proceedings, and did not miss a filing deadline. Accordingly, citing C.F.R. § 405.1868 does not explain the Board's denial of the request to reinstate.

The denial next quotes Board Rule 47.1, Motion for Reinstatement, emphasizing that " '*[t]he Board will not reinstate an issue(s)/case if the provider was at fault*,' " and Board Rule 47.3, Dismissals for Failure to Comply with Board Procedures, emphasizing that " '[g]enerally, *administrative oversight*, settlement negotiations or a change in representative will not be considered good cause to reinstate." Dkt. 18-2 at 17 (emphasis in original denial letter) (quoting Board Rule 47.1 and 47.3). The denial then asserts "[t]he Board will not generally reinstate Providers that were withdrawn by mistake when the providers or Group Representative are at fault (e.g., administrative oversight) but may reinstate if good cause is established." *Id.* at 18. According to the Board,

> the Group Representative did not establish 'good cause' as to why the Providers were mistakenly withdrawn from the group appeal… [C]onfusion over what FYE needed to be withdrawn… is clearly administrative oversight, and is therefore, the Providers' fault. Board Rule 47.1 and 47.3 state the Board will not reinstate an issue if the Provider was at fault and administrative oversight is not 'good cause' to

reinstate.

*Id.*

The Hospitals argue this explanation misconstrues the Board Rules, conflating Rule 47.1, Motion for Reinstatement, and Rule 47.3, Dismissal for Failure to Comply with Board Procedures. Yet, even if the Board's explanation points to Rule 47.3 where it does not apply, this does not render the denial arbitrary and capricious.

First, Board Rule 47.1, Motion for Reinstatement, itself provides sufficient explanation. It applies to dismissed or withdrawn appeals, and thus properly applies here, and clearly warns that the Board will not reinstate if the provider was "at fault." Dkt. 21-2, Board Rule 47.1. Here, the Board's denial explains how the record supports its position that the Hospitals are at fault: "confusion… is clearly administrative oversight, and is therefore, the Providers' fault." Dkt. 18-2 at 18. Nothing more is needed.

Moreover, since Board Rule 47.1 does not contain an escape clause for "good cause," the Board's alleged "facial[] misappli[cation]" of Board Rule 47.3 arguably advantages the Hospitals—rather than being arbitrary and capricious. The denial's application of the Board Rules suggests the Hospitals could have overcome their administrative oversight and mistaken withdrawals by showing good cause. The denial, however, goes on to explain that "the Group Representative did not establish 'good cause'… administrative oversight is not 'good cause' to reinstate." Dkt. 18-2 at 17–18. The Hospitals do not argue they showed additional grounds, besides inadvertence, for good cause.

The Hospitals argue that such "automatic" application of Board Rules, "regardless of severity and circumstances," is arbitrary and capricious. *See* Dkt. 20 at 24. However, they fail to provide any persuasive authority to support this theory. The Hospitals rely entirely on *University of Chicago Medical Center v. Sebelius*, a Northern District of Illinois case in which the court finds dismissal of a Medicare reimbursement appeal to be arbitrary and capricious. 56 F. Supp. 3d 916. 922-24 (N.D. Ill. 2014). There, the Board dismissed the appeal at issue because the plaintiff had failed to comply with a preliminary paper deadline. *Id.* However, it was "far from clear" whether the preliminary paper deadline applied to the plaintiff. *Id.* at 923. In other words, the Board

dismissed the appeal "without granting [the plaintiff] adequate notice," and "when [the plaintiff] failed to read the Board's collective mind, it suffered the dismissal of its appeal." *Id.* at 923. The court wrote, "[i]f that is not arbitrary and capricious, those words have no meaning." *Id.* at 923-24. Here, by contrast, the Hospitals do not claim they misunderstood the Board Rules or the Board Rules are confusing. Instead, withdrawal was their "mistake[]." Dkt. 12-2 at 22.

The Hospitals also argue that the denial was arbitrary and capricious because the Board did not explicitly consider that reinstatement would not cause undue prejudice to the Medicare Administrator Contractors or CMS and that neither opposed the request. They quote *Motor Vehicle Manufacturer's Association of the U.S. v. State Farm Mutual Auto. Insurance*: " 'We have frequently reiterated that an agency must cogently explain why it has exercised its discretion in a given manner.' " Dkt. 21 at 14 (quoting *State Farm Mut. Auto. Ins.*, 463 U.S. 29, 48 (1983)). While an agency must consider important aspects of the problem, it need not explicitly address every argument for and against its position. Here, the denial "cogently explain[s] why it has exercised its discretion in a given manner." *See State Farm Mut. Auto. Ins.*, 463 U.S. at 48.

### 2. Contrary to Law: Statutory Right to a Hearing

The Hospitals also argue that the application of the Board Rules to deny their request for reinstatement is contrary to law, denying their statutory right to a hearing. Under 42 U.S.C. § 1395oo(a), a hospital has a right to appeal, with a hearing, a reimbursement determination where certain jurisdictional requirements have been satisfied. 42 U.S.C. § 1395oo(a); 42 C.F.R. §§ 405.1803(a)(1). According to the Hospitals, "[t]he Board's reading of its Rules categorically to deny reinstatement of any appeal that a hospital has mistakenly withdrawn, regardless of the reason for the mistake, whether reinstatement is unopposed, and the procedural circumstances, is inconsistent with the robust right to a hearing in 42 U.S.C. § 1395oo." Dkt. 23 at 8.

While Congress did create a right to a hearing, it also vested the Board with the "full power and authority to make rules and establish procedures, not inconsistent with the provisions of [the Medicare statute] or regulations of the Secretary, which are necessary or appropriate to carry out" the Board's duties. 42 U.S.C. § 1395oo(e); 42 C.F.R. § 405.1868(a). This authority is broad.

SUMMARY JUDGMENT ORDER
CASE NO. 24-cv-08541-RS
8

For example, it includes the authority to "limit[] extension of time to appeal to the PRRB, cognizant that 'the Board is burdened by an immense caseload,' and that 'procedural rules requiring timely filings are indispensable devices for keeping the machinery of the reimbursement appeals process running smoothly.' " *Sebelius v. Auburn Re'l Med. Ctr.*, 568 U.S. 145, 157, 133 S. Ct. 817, 826, 184 L. Ed. 2d 627 (2013) (quoting *High Country Home Health, Inc. v. Thompson,* 359 F.3d 1307, 1310 (10th Cir. 2004)). In sum, while the record seems to reflect an innocent mistake on the part of the hospitals leading to a harsh result, the denial of reinstatement is not contrary to law in light of the Secretary's broad discretion to make rules to manage its reimbursement process. *Id.*

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion is denied and Defendant's motion is granted.

**IT IS SO ORDERED**.

Dated: January 6, 2026

_____
RICHARD SEEBORG
Chief United States District Judge